Mr. Walters, it's a pleasure to have you before us. Thank you, Your Honor. May it please the Court, Neil Walters from the University of Virginia School of Law. It's my pleasure this morning to introduce John Aiken, a third-year student, at least for a couple more days at the University, who will be presenting the argument this morning. Your Honors, may it please the Court. My name is John Aiken, and on behalf of the University of Virginia Appellate Litigation Clinic, I represent the appellant, Mario Baker. I will be addressing Mr. Baker's Sixth Amendment Strickland claim for ineffective assistance of counsel. At the conclusion of our arguments, we will ask this Court to reverse the decision of the District Court for the Eastern District of Virginia and remand the case with instructions to grant relief under Section 2255. Your Honors, Mr. Baker's Sixth Amendment right to counsel was violated for three primary reasons. First, appellate counsel's failure to raise an argument under Arizona v. Gantt amounts to a constitutionally deficient performance. Second, this deficient performance caused prejudice to Mr. Baker's defense. And third, Mr. Baker's claims had not been waived or forfeited at the time of his appeal, and Lockhart v. Fretwell in no way affects the Strickland analysis in this case. Returning to the first point, Your Honors, appellate counsel's failure to raise an argument under Arizona v. Gantt amounts to constitutionally deficient performance. A counsel's performance must be evaluated in light of his perspective at the time, and at the time, no reasonable attorney would have failed to raise an argument under Gantt. A Supreme Court precedent was clear. Gantt should be applied to cases pending on direct appeal, even if it represents a clear break from established precedent. A Baker was not finalized until nearly four months after Gantt was decided. In Davis v. United States was not decided until 2011, so the district court erred when it applied the good-faith exception of the exclusionary rule to Baker's case, as it did not exist at the time. Unless there was a separate and independent basis to justify the search, which was probable cause. Don't you have to account for that, too? Your Honor, the Because none of what you've said makes any difference if the police had probable cause based on their search of the passenger and what they found on the passenger, and the passenger's movements to go back to the vehicle. So we do have to consider that as part of the mix, don't we? Well, Your Honor, at the time of Mr. Baker's appeal, the Supreme Court precedent was clear, and I'm referring to Griffith v. Kentucky, and it said that cases, new rules of criminal procedure should be applied to cases pending on direct appeal. But what I'm saying is, even giving you the benefit of Gantt, don't you have a probable cause exception that Gantt didn't deal with? Gantt simply took back New York v. Belton, essentially, didn't it? Gantt didn't say that if there was an independent basis for probable cause, aside from arresting the occupant of the vehicle, okay, that it didn't say that the police couldn't rely on that independent basis of probable cause, so that we have a situation here where we have to also answer the question, is Gantt even dispositive, or is Gantt simply inapposite, because of the issue of probable cause derived from the passenger, as opposed to from the arrest of the driver? Well, indeed, Your Honor, and two points in response to that. The first would be the Supreme Court has held that probable cause must be particularized, and in this case there was no probable cause. The arrest was listed as incident to arrest when it happened, and under Gantt, the police may search the passenger compartment of a vehicle incident to arrest only if the arrestee is unsecured and within reaching distance of the compartment. I don't think you're answering the question. The question was that independently of Gantt, there was a Mr. Baker was the driver and Mr. Brown was the passenger, and the problem from your standpoint is that Mr. Brown disregarded an officer who was going to frisk, and he started, he was not going to let himself be frisked. We know why. He started heading back into the car, and at that point, the police were certainly justified in searching Mr. Brown's person, and Mr. Baker can't challenge that because it wasn't a search of Mr. Baker. Now, when they searched Mr. Brown's person, what they found was a gun, heroin, crack cocaine, $980 in cash, and a scale on Brown's person. Now, if that's true, there's a lot more than is needed for probable cause to search Baker's vehicle for other drugs and guns, and what my colleague is saying and what I agree with is that Gantt didn't disturb the basic view which has been in place since 1925 in the Carroll case, that if there's probable cause to search a moving vehicle, that the officers can do that, and they had an independent basis for probable cause in a search that Mr. Gantt, Mr. Baker doesn't have standing to challenge. They had probable cause to search the automobile. What does that have to do with Gantt? Well, Your Honor, I think it's important to bear in mind that in this case, it's the Sixth Amendment before this court and not the Fourth Amendment. It doesn't have to be a slam-dunk case on the probable cause. All that we must establish in order for Mr. Baker to prevail under Strickland is that there is a reasonable probability that the outcome would have been different, and it is a reasonable conclusion that a judge could have looked at these facts and found that Arizona v. Gantt prohibited the search of the vehicle incident to arrest. If that's the standard moving forward, all that we need to establish is a reasonable probability. But Gantt doesn't come into play if there's probable cause for an independent reason. Well, Your Honor, up to the point, if you look at the record, this has been addressed as a search incident to arrest for Mr. Baker. That's been the asserted probable cause throughout the opinion and throughout the record of the district court and the original finding. So it does bear saying that this doesn't have to be beyond a reasonable doubt. It's just a reasonable probability. And that is sufficient from looking at Gantt as similarly analogous. And, Your Honor, we would point to two cases from this court that were both decided during the same time period, U.S. v. Megenson and U.S. v. Majette. In both of those cases, as with this one, Arizona v. Gantt was decided during the pendency of their appeal. And in both of those other cases, as with this one, the arrest vehicles were search incident to an arrest for an offense. In addition to the point that Brown searched, the search of the passenger Brown afforded probable cause to search the vehicle, there are some other difficulties with the case. Moving on from that point, the Supreme Court's decision, I guess it was the Davis case, just indicated that the police were entitled under Leon to follow the laws that existed at the time. And what else can we expect of officers than giving them the— that they rely on the law at the time of the search? And at the time of the search, which is crucial, not the time that Gantt came down. It's what was crucial at the time of the search under Davis. And they were following the law as it existed. Well, Your Honor, it's crucial to note that Davis was a new law that was announced, and it's readily distinguishable from Leon and other previous good faith exception cases. With Leon, you're dealing with a static legal background against which a mistake was made. In that case, you had a magistrate judge that issued a warrant that later turned out to be invalid, but the legal backdrop that entire time remained the same. Now, what Davis dealt with was changes in the law, which is a totally different situation than what we have to deal with here. So there was no good faith exception to the exclusionary rule that would have applied at the time of this case. And as Strickland commands, we must look at counsel's perspective at the time. It's wholly irrelevant that hindsight might make his failure to raise this meritorious argument look better. At the time, Baker was entitled to this argument under Arizona v. Gantt. And the denial of this argument amounts to constitutionally deficient performance. And in order to prevail on this claim, that's all Mr. Baker must establish, that counsel was deficient at the time and that it prejudiced his defense. Your Honor, turning to the waiver and forfeiture arguments that have been raised, the government has argued that because Baker never filed a motion to suppress in the district court, he waived his Fourth Amendment challenge, and thus appellate counsel could not have been ineffective for failing to raise a waived claim. As a preliminary matter, the government never raised the issue of waiver in the district court. However, even if this court does wish to address the issue, it's without merit, as Baker's claim was. We can affirm on any basis in the record. Your Honor. How many times have we held that it was ineffective assistance of counsel on appeal to fail to raise a forfeited claim? I mean, there might be some sort of error at trial in a failure to raise a claim, but as I understand it, the issue before us is whether there was ineffective assistance of counsel on appeal. And I don't know that we've had ineffective assistance. We've held that there was ineffective assistance of counsel on appeal for failure to raise a forfeited claim. The odds against forfeited claims or waived claims are long indeed, and you have all sorts of reasons that courts want claims like motions to suppress to be raised before trial. I mean, confessions, indictments, speedy trial actions, searches, all these things, save judicial resources if they're raised before trial, and the courts don't give you a second bite at the apple on appeal, and that's what probably was going through counsel's mind. Your Honor, it's exactly those same concerns of judicial resources that motivates this argument we're making. There was no waiver in this case. Under 12E, there was good cause. Gant was not decided until after Baker had already been tried and convicted, and a motion to suppress would have been frivolous under the law as it existed prior to Gant. Well, if that's the case, then the police were following the law as it existed, since you say a motion to suppress would be frivolous. Would have been frivolous. If it would have been frivolous, the reason it would be frivolous was because at the time of a search, the police were following the law. I mean, the problem is you're running into yourself. Your Honor, while we acknowledge the police were following the law, and we acknowledge as well that the search would have been valid under the law as it existed at the time, Gant was a game changer, and it came in, and under the law at the time, it applied to this case. Even if the police acted in good faith, even under binding circuit precedent at the time, it was irrelevant. I thought I just heard you say it would have been frivolous to raise this. A motion to suppress, Your Honor, at trial. A motion to suppress. Why? Because the officers were following the law as it existed. I agree it would have been frivolous. Indeed, Your Honor, but once Gant came along, this changed the landscape. This changed the legal landscape facing counsel, and if the court were to accept the government's argument, there is no logical stopping point. This court and future litigants would be forced to wade through mountains of frivolous suppression motions filed purely to preserve issues that may one day have merit if the law changes in their favor. It's simply illogical for the government to say that there's no duty to anticipate changes in the law, but the counsel does have a duty to file suppression motions based on possible changes. With regards to Lockhart v. Fretwell, it does not in any way affect the Strickland analysis in this case, nor does it apply to Baker's case. As the Supreme Court repeatedly made clear, Lockhart does not modify or supplant the Strickland test in any way. Lafler v. Cooper, Glover v. United States, Williams v. Taylor, the court has repeatedly held that our holding in Lockhart does not supplant the Strickland analysis. It also does not support the proposition that the government has cited it for, that prejudice is evaluated under current law. Now, nowhere in that opinion does it state that courts must evaluate the issue of prejudice in light of current law or even take it into account. Looking at the opinion itself and what that case actually says, the court adopted the rule of contemporary assessment of counsel's conduct because a more rigid requirement could dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client. And the court then noted the prejudice component of Strickland test does not implicate these concerns. That's all that the court said. And when they were talking about this, they were speaking to a very narrow class of litigants. As the Supreme Court has characterized that holding, Lockhart, as well as the prior case on which it relies, Nix v. Whiteside, stands for the proposition that there are situations in which it would be unjust to characterize the likelihood of a different outcome as legitimate prejudice because defendants would receive a windfall as a result of an application of an incorrect legal principle or a defense strategy outside of the law. For an example, Nix v. Whiteside, which is the case that Lockhart was based on, involved an ineffective assistance claim that resulted from counsel's interference with defendants' intended perjury. Now, this is readily distinguishable from the case at hand. And as the court held in Williams v. Taylor, cases such as Nix v. Whiteside and Lockhart v. Fretwell do not justify a departure from a straightforward application of Strickland where the ineffectiveness of counsel does deprive the defendant of a substantive or procedural right to which he's due. Now, the government has also asserted there's a separate fundamental fairness inquiry, but this is something that the Supreme Court has explicitly rejected as contrary to law. Under Williams v. Taylor, the court compared two different approaches. Now, on the one hand, the Virginia Supreme Court read the court's decision in Lockhart to require a separate inquiry into fundamental fairness even when Williams is able to show that his lawyer was ineffective and that his ineffectiveness probably affected the outcome of the proceedings. On the other hand, the state trial judge omitted any reference to Lockhart and simply relied on our opinion in Strickland as stating the correct standard for judging the ineffective assistance claim. As to who had the better of the argument, the court was clear. The trial judge analyzed the ineffective assistance claim under the correct standard. The Virginia Supreme Court did not. Your Honors, Fourth Amendment issues aside, the heart of this case is the Sixth Amendment, and under Strickland, all that is necessary is that counsel was entitled to constitutionally effective counsel, and the Supreme Court has said that it will resist any specific enumeration of what that means. It's particularized to the context. But in this case, and I would point to an analogous case from the Sixth Circuit, U.S. v. Ballard, where the court said that appellate counsel's failure to raise an argument based on an important and relevant change in the law constitutes deficient performance. Counsel does not have to anticipate the law, but once a change, particularly an important and relevant change, does come about, we do expect counsel to be aware of it. Baker's appellate counsel should have been aware of Arizona v. Gantt. The case was decided nearly four months before the court's opinion came down, before this court's decision in his case came down. And during that time, he should have raised it. How do you do effectively if the case is a loser anyway, because Gantt left open probable cause to search an automobile? That's the whole point. Your Honor, all that is required is a reasonable probability that another judge might have disagreed, that the outcome could have been different. All that is necessary is enough doubt to undermine confidence in the outcome. That's what the court said in Strickland, and that's what happened in Baker's case. It undermines confidence in the outcome because this clearly relevant and significant legal issue that was determinative in cases before this court. There's no confidence undermined in the outcome if there was probable cause for independent reasons to search the car, and if the police were following the law as it existed at the time of the search. For two independent reasons, there's no loss of confidence in the outcome at all. In fact, the outcome is certifiably correct under the Davis case and under Gantt itself. It's correct. Your Honor, I see that my time has expired. May I briefly conclude? Sure. Your Honor, Davis v. United States is wholly irrelevant to this case. The Supreme Court has said repeatedly that hindsight cannot be used to judge counsel's performance. All that matters is— Well, prejudice is conducted. The Supreme Court said it doesn't matter when Davis came down, that prejudice is conducted under current law. Well, Your Honor, we disagree with that characterization of Lockhart. Nowhere in the opinion does it— But we've chewed the bone. You have some rebuttal time as well, and we look forward to hearing you on rebuttal. Thank you, Your Honors. Mr. Murray. Mr. Murray. Good morning, Your Honors, and may it please the Court. Michael Murray for the United States. There are two reasons that Baker cannot show prejudice and two reasons that he cannot show deficiency. Baker cannot show prejudice because he does not qualify for relief under Gantt, and even if he did, the good faith doctrine would preclude exclusion of the evidence in this case. What was that last? Even if he did qualify for relief under Gantt, the good faith doctrine would preclude exclusion of the evidence in this case. And that's because prejudice is assessed at the time of adjudication of petitioner's claim, not at the time of counsel's decision. That's what the Supreme Court held in Lockhart v. Fretwell, and this Court applied in Bell v. Osmond. And here, the good faith doctrine under Davis, as it's explained in Davis, holds that— We went over a lot of this with opposing counsels, so I think we understand those arguments. Is there anything that we neglected? And if there's not, I'm just going to ask my colleagues whatever questions they might have of you. Sure, Your Honor. Anything we overlooked? No. I think that Your Honors aired the issues fairly well in the opening argument. Are you sure? How did you know? I'm not sure. I can't read your minds, Your Honors. I was wondering how you figured that out. You didn't hear from all of us. Well, I'm happy to answer any questions. No, you're fine. You're answering the question that are you certain that we've covered everything, that we missed anything. Do you think we haven't missed anything? Well, there are many arguments in the case, Your Honor. The question is, do you have anything else to add? Well, I would like to make a few points. Go ahead. That's what I'm about to say. Go ahead. Add that. Sure. Under Gant itself, there's also reason to believe that there was evidence of the offense of arrest of both Brown and Baker in the vehicle. So in addition to the probable cause arguments that both Judges Wilkinson and Keenan were raising, Gant itself provides reason for the officers to search the vehicle. That's because Brown was arrested for having a firearm and then drugs, a digital scale, and a large amount of cash were found. So there was reason for the officers to believe that there was evidence of those offenses in the vehicle. For the same reason, Baker, there was reason to believe that there was evidence of the offense of arrest of Baker in the vehicle. He was arrested on an outstanding warrant, taking the record in the light most favorable to the government, as must be done at this stage of the proceedings. That was a federal firearm warrant related to his 2007 interaction with police, and thus the officers might have had reason to believe that there's evidence of the offense of that arrest in the vehicle as well. Well, the question is, why wouldn't a counsel raise Gant once it came out that this case was not finished on direct appeal? Why wouldn't you? Because let's assume that Gant didn't totally address it, but there is a question whether or not you can use another person to take a person from them that otherwise would be protection for them. Because you agree on these facts clearly. Baker, you could not go into the car based on Baker being clearly arrested and in the car, I mean, in the police car. Correct? No, I wouldn't quite agree with that. That's because the offense of arrest for Baker, taking the record in the light most favorable to the government, was for an unlawful firearm, an outstanding warrant for an unlawful firearm. And so there was reason to believe that there might be evidence of that offense of arrest in the vehicle. So even under Gant. What gave you that? What would suggest that in the facts of this case? Well, the nature of the offense itself. The nature of the offense being, and we're taking the record in the light most favorable to the government here. Sure, sure. It being a firearm offense, there would be reason to believe that there might be evidence of a firearm offense in the vehicle. Do you think that would get you around Gant every time? If you arrest someone because of a warrant that a possession of a firearm illegally, then automatically that means it's likelihood that it's in the car. After they're away from the car, totally arrested, removed from that vehicle.  It doesn't matter whether Gant is instituting an inquiry that is based solely on the nature of the offense that is the subject of the arrest, or whether there's a more totality of circumstances test. In Gant itself, I think there are strong indications of the former, and that's because the justices in the majority, the plurality, and then Justice Scalia, distinguish strongly between drug offenses and non-drug offenses. And so that indicates that the nature of the offense is the primary driver. But even if that's not the case, and it's a totality of circumstances, I'm sorry. Well, under the Fourth Circuit, we say that drugs and guns come automatically. Then you'd be able to get around even the caution that the Supreme Court gave about the distinction of drugs and other things would always apply. Because if you have drugs and the Fourth Circuit say they come together, then you'd be able to get around Gant every time, even if there's a question. Wouldn't it be? Perhaps, Your Honor. Although in this case Baker was only arrested for, assuming the record the one way, was only arrested for the firearm offense. And I think it would be reasonable for authors to believe that there would be evidence of the firearm offense in the vehicle, putting aside the— The government didn't know that it was an outstanding warrant for a firearm. The police didn't know it was an outstanding warrant for a firearms offense. They just knew he had an outstanding warrant. Isn't that correct? Yes and no. That sort of wipes out your argument, doesn't it, there? No, Your Honor. First of all, they knew it was from the U.S. Marshals, so they knew it was a federal warrant. Lots of things. Yes, Your Honor. Although in these circumstances, given the procedural posture, we have to read the record in the light most favorable to the government. Right, but you can't speculate what that warrant was for, and I think that's what you're doing. It could have been for dog fighting. I mean, you don't need it. Why are you speculating? I completely agree, Your Honor. Because, you know, what it does is it undermines confidence in the rest of your presentation. Well, I'm sorry that you feel that way, Your Honor. But what we would say is that if the record is read in the light most favorable, it could be read in that way. Of course, that brings us back to the waiver argument. There was an emotional suppress here, and as Your Honor points out, the record is not as fully developed as it might be otherwise. And that is another reason why the waiver argument is very important. For all these reasons, if there are no further questions, I will. The waiver, because it wasn't raised in this trial level. Yes, Your Honor. Right. So it wasn't raised there, so you could only raise it in effective assistance of counsel, right? Yes, yes. That's a way around the waiver. Right. And we say that we'd rather for you to do it in a 2255 unless the record clearly indicates there's ineffective assistance, correct? For ineffective assistance, yes, it should be raised. Well, that becomes a conundrum for the defendant, doesn't it, in terms of when do you raise it? Yes, I think that's exactly right. And that's exactly why appellate counsel acted reasonably in thinking that perhaps the better course would be for Baker to raise it on a 2255 and not for him to raise the waived claim for the first time in the opening brief. And that's, of course, assuming that, again, it had been decided before the opening brief was filed, which it hadn't been. For the foregoing reasons, the district court decision should be affirmed. Thank you. Mr. Aiken, you have some time for rebuttal, sir. Thank you, Your Honors. I would first point to the record at page 93. The officers did not know what the outstanding warrant was for. It was an unidentified warrant. Your Honors, the government's theory of probable cause here amounts to nothing more than guilt by association. In the United States V.U. Bar, the Supreme Court held that probable cause must be particularized. And beyond these items found on Brown's person, they have not given any theory as to why that would extend probable cause to the vehicle. The cases that they've cited for these probable cause cases are distinguishable. In one of them, I don't have the particular ones in front of me, but there was a smell of marijuana in the vehicle that gave rise to probable cause. In another, drugs were found on a 16-year-old. And when the court was doing a discussion of probable cause analysis, they said that using someone under the age of 18 to transport drugs gave rise to an inference of a conspiracy. Now, these are not the facts that we have here. There was no reason to believe there was no probable cause that could be inferred from finding drugs and contraband on Brown's person as to Baker and his vehicle. And, Your Honor, I would also— Brown was a passenger in the vehicle. He was trying to get into the vehicle. Well, Your Honor, the record is unclear about him trying to get into the vehicle, but there was no reason to—beyond the warrant. When he was arrested in 2008, the officer ran the records. A warrant came back on Baker, and he also ran Brown, and no warrant came back. He had no probable cause to arrest him in the first place or to search for any drug paraphernalia. It was after Brown decided to walk away from the vehicle and leave with the items on his person that he was frisked for weapons, and the officer uncovered the contraband. Nothing in this fact gives rise to probable cause that would justify a search of Baker's vehicle. That theory is nothing more than guilt by association. There's no evidence that he tried to get back into the car, is it, when he walked away, did he? No, Your Honor. He—there's some confusion about whether or not he reached for his cell phone. The officer, I believe, said that he thought he was reaching for a gun. Brown testified that he was reaching for his cell phone. He tried to get back in the vehicle, didn't he? He turned and tried to walk away when he was told that he was being frisked. And after he turned and tried to walk away from the vehicle, the officer stopped him and frisked him and said that he located a weapon in his right front pants pocket, and that's when he searched. There's no evidence that once he walked away that he turned to try to get back into the car, is there? Correct, Your Honor. Right, that's what I thought, yeah. And I would also point out, finally, one more thing that's totally absent from the record here is any kind of affidavit from the attorney giving any sort of reasonable justification for why he did not raise Gant. There's no testimony from the attorney, and what we have is from this court specific language. Griffin v. Warden, courts should not conjure up tactical decisions an attorney could have made but plainly did not. Mr. Draken, if you could back up just a minute, did you say that there was no evidence that he tried to get back in the car? There is confusion as to whether or not he reached for his cell phone after he reached for his cell phone, reached back into the car. But as far as I understand the record, he did not attempt to get back into the car. Well, the officer said on page 76, at that point I was able to subdue him. We ended up on the ground, short little scuffle. I was able to put handcuffs on him. Did he indicate why he was going back in the vehicle? Yes, he said it was to get his cell phone. And on 75, there's also the reference, I told Mr. Brown what was going on and that I needed him to step out of the car, okay? So then the colloquy goes on, and the question at the top of 76 seems to indicate that he was going back in the vehicle. And he said, yes, he did. He said it was to get his cell phone. So wasn't there an attempt here if we construe the evidence in the light most favorable to the government? It could be construed as an attempt to get back into the vehicle, but I think the most plausible reading of what was going on there is he was reaching back into the vehicle to get his cell phone, not attempting to get back into the vehicle. But wasn't he out of the car before they had the, he just walked off? Yes, Your Honor. All right, so he was alluding to, he said, why did you get back to walk toward the car and the cell phone? But there's no evidence that after he walked away, he turned to go back to the car. Correct, Your Honor. Right, exactly, because he was out there. But this, even more so, this case would be one where you would challenge under Gant because here, Mr. Baker certainly has standing to question the search of his car as to what may have been found there. He doesn't lose that. He has no standing to search the passenger. But the question is, if you could just so easily get around Gant by saying, oh, I found this on this person, now I'm going to your car, that would be, make very little. I can't imagine why counsel wouldn't try to question Gant in a case like this. That's one of our primary contentions, Your Honor, that Gant was undisputably a relevant argument that there was a duty and an obligation for appellate counsel to raise. Absolutely. It's not a slam dunk that Gant wouldn't apply as to him in this circumstance. Because, again, as counsel alluded to about he had a warrant for a gun, they didn't know that at all. Indeed, Your Honor, and all we need is a reasonable probability. Okay, that's all I have. We have no further questions. Thank you, Your Honor. Thank you, Ms. Dakin. I'll see your student counsel. I appreciate all the effort that you've put into the case. We thank you so much. We'll adjourn court and come down and recounsel.
judges: J. Harvie Wilkinson III, Roger L. Gregory, Barbara Milano Keenan